IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EARNEST LEE ARRINGTON, #142001, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:04cv159-WKW |
| | ) | (WO) |
| TERRANCE MCDONNELL, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, plaintiff Earnest Lee Arrington (Arrington), a prison inmate, alleges that correctional officers Leon Bolling ("Bolling") and Elliott Gilmore ("Gilmore") used excessive force against him when they assaulted him in the health care unit at the Kilby Correctional Facility.  The plaintiff also asserts that health care providers Linda Lawrence and Loraine Graves, and correctional officer Bobby Barrett were deliberately indifferent to his medical needs when they delayed and/or failed to treat his medical conditions.  Arrington names as defendants Warden Terrance McDonnell, R.N. Linda Lawrence, L.P.N. Loraine Graves, Lieutenant Leon Bolling, Captain Bobby Barrett and Correctional Officer Elliott Gilmore.  The plaintiff seeks damages and injunctive relief and demands trial by jury.

The court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(c)(3).  In response to the orders of the court, the defendants filed special reports and answers. The court then informed the plaintiff that the defendants' special reports may, at any time, be treated as

motions for summary judgment, and the court explained to the plaintiff the proper manner in which to respond to a motion for summary judgment. The plaintiff filed responses to the defendants' special reports. Upon consideration of the motions, the plaintiff's responses and the supporting and opposing evidentiary materials, the court concludes that defendants McDonnell, Bolling, Barrett and Gilmore's motion for summary judgment is to be granted in part and denied in part. The court further concludes that defendants Lawrence and Graves' motion for summary judgment is due to be granted.

## SUMMARY JUDGMENT STANDARD

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence to support his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is due to be granted in favor of the moving party. *Celotex,* 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is

entitled to it as a matter of law, summary judgment is proper. *Celotex,* 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to a liberal interpretation by the courts, a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a material fact in order to avert summary judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## DISCUSSION

The use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the inmate does not suffer serious injury. *Hudson v. McMillian*, 503 U.S. 1 (1992). Whenever prison officials stand accused of using excessive physical force constituting "the unnecessary and wanton infliction of pain" violative of the Cruel and Unusual Punishments Clause, the core judicial inquiry set out in *Whitley v. Albers*, 475 U.S. 312, 320-321(1986) applies: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Thus, summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, have been placed in jeopardy. *Whitley,* 475 U.S. at 312 (riot and hostage situation); *Ort v. White*, 813 F.2d 318 (11th Cir. 1987) ( Inmate denied water for refusing to carry water container while on work detail). To establish an Eighth Amendment claim for excessive force, a plaintiff must prove that "force was applied . . .

maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)). *See also Hudson*, 503 U.S. at 6-7.

The undisputed evidence demonstrates that, on February 6, 2004, plaintiff Arrington was incarcerated at Kilby. Sometime during his shift, defendant Bolling informed Arrington that he was being moved to the hospital unit.[1] Although Arrington initially refused to go, after ten minutes he allowed Bolling to escort him to the health care unit. Arrington was handcuffed and shackled in leg irons. When they arrived at the hospital unit, Arrington refused to be weighed.

What happened next is hotly disputed. The plaintiff alleges that when he refused to be weighed, defendant Bolling and officer Arthur Mooney[2] grabbed him and held him while defendant Gilmore struck him in the head with a closed fist several times. Thereafter, according to Arrington, Bolling stunned him with a taser.

The defendants, on the other hand, assert that when Arrington refused to step on the scale, Bolling ordered him to stand on the scale. Bolling admits drawing his taser from its holster but denies using the weapon on Arrington. According to Bolling, once he drew his taser, Arrington cooperated, stepped on the scale and was weighed. A body chart was

---

[1] Arrington has a long history of engaging in hunger strikes. Although Arrington denies that he was on a hunger strike, the court concludes that whether Arrington was on a hunger strike is immaterial to the resolution of the motions for summary judgment.

[2] Mooney is not named as a defendant in this action.

4

completed without further incident.  Gilmore denies striking Arrington.

**A.  Defendants Leon Bolling and Elliott Gilmore**.  According to Arrington, defendant Bolling stunned him with his taser and defendant Gilmore beat him for no reason.  Both defendants deny using any force at all against Arrington.  Suffice it to say, Bolling and Gilmore's denials of Arrington's claims create genuine issues of fact which preclude summary judgment.  Furthermore, the disputed issues of fact preclude consideration, at this juncture, of the defendants' claims of qualified immunity.  If the facts are as Arrington alleges in his complaint, neither Bolling nor Gibson would not be entitled to immunity because any correctional officer would know that the law was clearly established that force may not be used against inmates without reason.  The court therefore concludes that the defendants Bolling and Gilmore's motion for summary judgment is due be denied.

**B. Defendant Terrance McDonnell**. The plaintiff alleges that defendant McDonnell is liable because he failed to take action against Gilmore after Arrington reported that Gilmore had assaulted him.  Supervisory personnel cannot be held liable under § 1983 for the actions of their subordinates under a theory of respondeat superior.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  However, liability may be imposed if the plaintiff shows that the defendant either personally participated in the alleged constitutional violation or instigated or adopted a policy that violated the plaintiff's constitutional rights.  *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1192 (11th Cir. 1994), *abrogated on other grounds Hope v. Pelzer*, 536 U.S. 730 (2002).

> [Supervisory] liability under section 1983 must be based on something more than a theory of respondeat superior. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. *Cross v. Alabama Dep't. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995) (quoting *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990)); *accord Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) ([A] supervisor may be held liable under section 1983 if the supervisor had personal involvement in the constitutional deprivation or if a sufficient causal connection exists between the supervisors conduct and the constitutional violation.).

*Dolihite v. Maughon*, 74 F.3d 1027, 1052 (11th Cir. 1996).

Arrington does not assert that McDonnell knew about Gilmore's intent to assault him, nor does he allege that McDonnell had a policy of allowing guards to assault inmates. Rather Arrington alleges that because McDonnell was the warden, he should have taken action against Gilmore after Arrington reported the assault.[3] Arrington does not contend, nor does he present any evidence to suggest, that McDonnell knew or should have known that he was going to be attacked by Gilmore. He contends that because beatings by guards have occurred with regularity over the years,[4] McDonnell should have disciplined Gilmore as soon as Arrington reported the assault. This failure to discipline is insufficient to tie the warden to

---

[3] Interestingly, Arrington does not claim that McDonnell should have taken any action against Bolling, perhaps because Arrington does not allege that he reported Bolling's assault to McDonnell.

[4] The plaintiff's unsworn allegations about a pattern of beatings by guards is insufficient to bring Arrington's claims within the ambit of the type of preexisting substantial risk of harm sufficient to put an official on notice of the need to alleviate the condition. *See Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001).

Gilmore's assault against Arrington. Thus, Arrington has failed to establish that McDonnell acted with deliberate indifference to his safety by allowing him to be guarded by Gilmore. Accordingly, the motion for summary judgment with respect to Arrington's claim against McDonnell should be granted.

**C. Deliberate Indifference to Medical Needs**. The plaintiff next complains that defendant Lawrence, Graves and Barrett were deliberately indifferent to his serious medical needs by refusing to treat his eye condition on January 5, 2004. In opposition to the defendants' special report, Arrington also complains that he was denied treatment for his eyes on May 13, 2003 and June 11, 2003, and for a sinus infection on August 4, 2003 and October 6, 2003.[5]

To prevail in a suit based on an Eighth Amendment claim concerning serious medical needs, a prisoner must show at a minimum that prison officials acted with deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999). Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson*, 503 U.S. at 9. A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

---

[5] Arrington also alleges that Nurse Lowery denied him treatment for his blood pressure condition on June 24, 2003. He asserts that although Nurse Lowery directed that he be weighed every 8 weeks, he has not been weighed since that order was given on June 26, 2003. Nurse Lowery is not a defendant in this action and Arrington has failed to allege that any other defendant knew about Lowery's actions.

7

recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Thus, to survive summary judgment on this claim, the plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. *See LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993). Prison officials must have been deliberately indifferent to a known danger before the court can say that their failure to intervene offended "evolving standards of decency," thereby rising to the level of a constitutional violation. *Estelle*, 429 U.S. at 105-06. The known risk of injury must be "'a strong likelihood, rather than a mere possibility'" before a prison official's failure to act can constitute deliberate indifference. *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989). Under this standard, a prison or medical official does not act with indifference by providing medical care that is different from that which a prison inmate desires. *See Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment. . . . An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994) . . . Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical

8

>need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1189-89.

The medical records filed in this case demonstrate without dispute that the plaintiff received medical care for his eye condition. In fact, Arrington concedes that his eye was treated on the third shift on January 5, 2004, by Nurse Shaver. In addition, Arrington concedes that he was offered treatment for his blood pressure but he refused the treatment because he disagreed with the doctor's choice of medication. The medical records also demonstrate that Arrington was treated on numerous occasions for his eyes, sinus infection and other medical conditions and that he refused treatment for these conditions on numerous occasions. Although the plaintiff argues that he should have been given different or perhaps quicker treatment, he presents no evidence that any of the treatments he alleges were delayed or denied created a substantial risk to his health. The incontrovertible evidence demonstrates that Arrington was not denied treatment. Moreover, Arrington has failed to present any medical evidence establishing that he suffered any detrimental effect as a result of the defendants' actions or that the defendants in any way disregarded a substantial risk to his health by delaying medical treatment. *See generally Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). It is clear that the plaintiff's disagreement is with the efficacy of his treatment. Arrington's desire for different or additional treatment does not establish a constitutional violation. *Hamm, supra.* At best, the plaintiff offers the court nothing more than his own

9

unsubstantiated opinions about the quality of the medical care which he received. The plaintiff's opinions are insufficient to create a genuine issue, and his failure to support his claim with medical or scientific evidence is fatal to it. Therefore, it is clear that the plaintiff has failed to establish a genuine issue about deliberate indifference on the part of these defendants with respect to this aspect of his claim.

In the final analysis, the plaintiff has failed to come forward with any evidence that the defendants knew that he faced as a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer, supra.* It is undisputed that the plaintiff received medical treatment for his complaints and that he was provided access to follow-up medical care. The plaintiff has not shown by medical evidence consistent with FED. R. CIV. P. 56(e) that the treatment he received was so deficient as to amount to deliberate indifference in violation of the Eighth Amendment. *See Brown, supra* (A pro se litigant's allegation of contaminated drinking water found unsubstantiated and completely speculative because the litigant failed to submit a doctor's diagnosis for any medical examination evidence supporting those allegations). Consequently, Arrington has failed to establish a genuine issue about deliberate indifference on the part of these defendants. *Id.,* at 670. Summary judgment is therefore due to be granted in favor of Lawrence, Graves and Barrett on this claim. *Celotex,* 477 U.S. at 322-23.

## CONCLUSION

Accordingly, it is the Recommendation of the Magistrate Judge as follows:

1. That defendant McDonnell's motion for summary judgment be GRANTED and that defendant McDonnell be dismissed as a defendant in this action.

2. That defendants Lawrence, Graves and Barrett's motions for summary judgment be GRANTED and that Lawrence, Graves and Barrett be dismissed as defendants in this action

3. That defendants Bolling and Gilmore's motion for summary judgment be DENIED and that the plaintiff's claims against them be set for trial by jury.

4. That the parties shall file any objections to the said Recommendation on or before **MAY 25, 2006.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on

September 30, 1981.

    Done this 12th day of May, 2006.


                                               /s/Charles S. Coody
                                    CHARLES S. COODY
                                    CHIEF UNITED STATES MAGISTRATE JUDGE